```
         UNITED STATES DISTRICT COURT FOR THE
              DISTRICT OF NEW HAMPSHIRE
```

Nicole Corin Christian

    v.                                      Civil No. 05-cv-356-JD
                                            Opinion No. 2007 DNH 114

Travis W. Anderson, et al.

## O R D E R

Nicole Corin Christian, proceeding pro se, brings federal civil rights claims under 42 U.S.C. § 1983 and state law claims against New Hampshire State Trooper Travis W. Anderson, Grafton County, the Superintendent of the Grafton County House of Corrections ("GCHC"), and Corrections Officer Roberta Darling. Christian's claims arose from the circumstances of her arrest and brief incarceration in October of 2002. The defendants move for summary judgment. Christian has objected to the Grafton defendants' motion, but did not file a response to Anderson's motion, despite being given additional time to do so.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

I. Anderson's Motion for Summary Judgment[1]

Nicole Christian was driving with her mother from Massachusetts to Vermont during the evening of October 6, 2002. Trooper Anderson stopped the car for speeding on I-89 near Lebanon, New Hampshire. Anderson asked Christian more than once for her driver's license, but she refused to comply. Christian asked what would happen if she did not produce a driver's license, and Anderson answered that she would be arrested. Christian then said that she did not have a driver's license and did not need one to drive through New Hampshire.

---

[1] Because Christian failed to file any response to Anderson's motion, the properly supported facts he provides in his statement of material facts are deemed to be admitted. LR 7.2(b)(2).

Anderson asked Christian several times to get out of the car, which she refused to do.  When Anderson reached into the car to unfasten Christian's seatbelt, she and her mother pushed and grabbed at his arm to prevent him from unfastening the seatbelt.  Because of their interference, Anderson could not get the belt unfastened and instead again asked Christian to get out of the car, which she refused to do.  Anderson tried again unsuccessfully to unfasten the seatbelt.  He then tried to pull Christian out of the car, which was also unsuccessful.  Anderson then grabbed and twisted Christian's left wrist to force her to get out of the car.  With that incentive, Christian unfastened her seatbelt and got out of the car.  She then resisted being handcuffed, forcing Anderson to hold her arms for cuffing.

Once Nicole Christian was out of the car and handcuffed, Anderson conducted a pat down search for weapons.  She complained that the handcuffs were too tight, and Anderson checked and adjusted them.  Anderson put her in the back seat of his cruiser.  He then arrested Christian's mother, Linda Christian, handcuffed her, and attempted to put her in the back seat of the cruiser with her daughter.  Nicole, however, interfered by sticking her feet out of the cruiser.  Anderson called for back up.  Once both women were in the cruiser, Anderson drove them to the Lebanon Police Department.

Nicole requested medical attention for her wrists and was given an ice pack. Linda testified in her deposition that her daughter's wrists appeared to have abrasions from the handcuffs. Nicole refused to give Anderson her name, date of birth, or social security number. When asked where she lived, Nicole replied, "In my skin." Linda also refused to give an address. Neither was able to pay a $30 bail for release on personal recognizance.

A bail commissioner was called to the police station. Anderson explained that Nicole had been uncooperative and did not give an address. The bail commissioner set bail at $5000. Anderson then transported Nicole and her mother to the Grafton County Detention Center.

## Discussion

Christian alleges federal claims that Anderson used excessive force in violation of the Fourth Amendment and that he sexually molested her in the course of her arrest in violation of substantive due process under the Fourteenth Amendment. She alleges state law claims of assault, harassment, invasion of privacy, abuse of process, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress,

4

and civil conspiracy.  Anderson moves for summary judgment on all of her claims.

A.  Excessive Force

"To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances."  --- F.3d ---, Jennings v. Jones, 2007 WL 2339195 at *7 (1st Cir. Aug. 17, 2007).  Excessive force claims are evaluated under the Fourth Amendment's objective reasonableness standard that permits force to be used only to the extent an officer reasonably, even if mistakenly, believed that force was necessary.  Whitfield v. Melendez-Rivera, 431 F.3d 1, 7 (1st Cir. 2005).  "Whether the force used to effect a particular seizure is reasonable 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)); see also Pena-Borrero v. Estremeda, 365 F.3d 7, 12 (1st Cir. 2004).  Some amount of physical coercion is typical during an arrest so that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers'" is actionable. Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Christian does not dispute that she failed to comply with Anderson's direction that she get out of the car. She also does not dispute that she and her mother interfered with Anderson's efforts to remove her from the car. Under these circumstances, the very minimal amount of force used by Anderson to get Christian out of the car, handcuffed, and into the cruiser was patently reasonable. Therefore, Anderson is entitled to summary judgment on Christian's excessive force claim.

B.  <u>Sexual Assault as a Substantive Due Process Violation</u>

Sexual assault by a police officer acting in that capacity can constitute a substantive due process violation. <u>See</u>, <u>e.g.</u>, <u>Haberthur v. City of Raymore, Mo.</u>, 119 F.3d 720, 724 (8th Cir. 1997); <u>see also</u> <u>Poe v. Leonard</u>, 282 F.3d 123, 136-38 (2d Cir. 2002) (holding that substantive due process governs plaintiff's claim of violation of her constitutional right to privacy). In this case, however, no sexual assault occurred. To the extent Anderson touched Christian, the undisputed facts show that he did so for the legitimate purposes of removing her from her car, handcuffing her, and conducting a pat down search for weapons or contraband. Christian provides no factual support for her allegations of sexual assault.

Anderson is entitled to summary judgment on this claim.

C.   State Law Claims

Christian's state law claims against Anderson are addressed along with the state law claims she brings against the Grafton County defendants after consideration of their summary judgment motion on her federal claims.

II.   Grafton County Defendants' Motion for Summary Judgment

In her second amended complaint, Christian alleges federal claims against Grafton County, Grafton County Commissioner Michael Cryans, Steve Pangoulis, and Raymond Burton; Glenn Libby, Superintendent of the Grafton County House of Corrections ("GCHC"), and Roberta Darling, a former Correctional Officer at the Grafton County House of Corrections. Her claims are based on allegations that she was subjected to a strip search at GCHC and on allegations about the conditions of the cell where she slept. She asserts that her allegations state violations of the Fourth, Fifth, Ninth, and Fourteenth Amendments. She also alleged state law claims of assault, harassment, invasion of privacy, and intentional infliction of emotional distress against Corrections Officer Roberta Darling and negligent infliction of emotional

distress and negligence against all of the Grafton County defendants.

The Grafton defendants move for summary judgment on all of the claims against them.  In response, Christian filed a "Preliminary Objection," arguing that she has not been able to complete discovery.  Despite Christian's pro se status, she is aware, based on the proceedings in this case, that discovery disputes must be addressed through a motion to compel.  She cannot avoid summary judgment by asserting incomplete discovery without complying with the requirements of Federal Rule of Civil Procedure 56(f).  Because Christian has not met those requirements, she is not entitled to "the prophylaxis of Rule 56(f)."  Rivera-Torres v. Rey-Hernandez, --- F.3d ---, 2007 WL 2510171 at *3 (1st Cir. Sept. 6, 2007).

In addition, the only supporting evidence that Christian filed with her objection to summary judgment is copies of two pages from the GCHC "Facility Operations" manual, bearing a revised date of December 8, 2003.  She failed to provide her own affidavit or other competent evidence in support of her objection.  See Fed. R. Civ. P. 56(e).  As a result, all of the properly supported facts presented by the defendants, which do not relate to the "Facility Operations" manual, are deemed to be admitted.  LR 7.2(b)(2).

After Christian and her mother were delivered to GCHC, Christian was taken by Corrections Officer Darling to a secure room for a clothing exchange. Darling remained in the room with Christian for the clothing exchange. The room was otherwise private and did not have cameras or audio communications equipment. The clothing exchange process required Nicole to remove all of her own clothing and to put on clothing provided by the GCHC.

As she undressed, Christian gave Darling the pieces of her clothing. Christian balked at taking off her underwear, but Darling told her that it was required by law. Christian stated in her deposition that she tried to cover her nudity with her hair but Darling pulled her hair out of the way. Darling gave her underwear, pants, and a T-shirt to wear. She was allowed to keep her own shoes. Christian refused to sign the inventory form for her clothing. She was then put in a cell with her mother. The next morning they were transported to the Lebanon District Court for arraignment.

A.   Parties

The Grafton defendants contend that they were all sued in their individual capacities and that the county is not a party. Christian does not dispute that the defendants were sued in their

individual capacities or that the county is not a party.  The record is less clear, however.

Christian included Grafton County as a party in her complaints and stated in her second amended complaint that the individual defendants were sued in their individual and official capacities.[2]  The defendants argue that they were "served" in their individual capacities and that although Grafton County was named as a defendant in Christian's complaints, it "has never been sued in this action."  Given the vagueness of those assertions, the status of the county in this case is not clear.

The defendants assert, in the alternative, that Christian cannot prove her federal claims against the county because she lacks evidence that any of the constitutional violations she alleges were perpetrated pursuant to a county policy or practice.  "[U]nder § 1983, a municipal government will only be held liable when the execution of the municipal government's policy or custom inflicts the injury."  Whitfield, 431 F.3d at 9 (internal quotation marks omitted).  A single incident of misconduct, standing alone, does not show a municipal policy or custom.  Id. at 12.

---

[2]Suits against officials or officers in the official capacities are suits against the governmental entity.  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

Christian's theory appears to be that GCHC had a policy to strip search all detainees, regardless of whether they were charged with misdemeanors or other crimes.[3]  The only evidence she submitted to show a county policy pertaining to her federal claims is the two-page copy of the Security and Control section of the Facility Operations manual.  That section states: "Revised December 8, 2003," meaning that policy was not in effect in October of 2002 when Christian was detained.  In addition, the submitted policy on searches does not show that the county had a policy in 2003, before or after, that if followed would cause constitutional injury.  Therefore, Grafton County is entitled to summary judgment on Christian's federal claims.

B.  Strip Search

Christian contends that the clothing exchange process constituted a strip search in violation of her constitutional rights.  It is well-established "that an individual detained on a misdemeanor charge may be strip searched as part of the booking process only if officers have reasonable suspicion that he is either armed or carrying contraband."  Wood v. Hancock County

---

[3]Her unsupported assertion that the defendants do not deny having an unconstitutional policy does not provide competent evidence that such a policy existed.

Sheriff's Dep't, 354 F.3d 57, 62 (1st Cir. 2003).  The defendants acknowledge that the circumstances of Christian's detention did not justify conducting a strip search.

They argue, however, that the clothing exchange process was not a strip search.  A strip search is "an inspection of a naked individual, without any scrutiny of the subject's body cavities." Blackburn v. Snow, 771 F.2d 556, 561 (1st Cir. 1985).  Inspection of a naked individual is a search, regardless of the officer's subjective intent, if an officer focuses his or her attention on the detainee's naked body and "viewing the naked body was an objective of the search, rather than an unavoidable and incidental by-product."  Wood, 354 F.3d at 65.

Although the defendants maintain that Darling did not intend to conduct a strip search and did not do so, the circumstances are too close to call in the context of summary judgment. Christian testified in her deposition that Darling moved her hair to expose her body.  Darling admits that she "might have" looked at Christian while she was naked "to see if she was wearing any jewelry (i.e. earrings, bracelet, necklaces, etc.) or had body piercings where jewelry was being worn."  Given the summary judgment standard, the defendants have not shown, based on undisputed facts, that a strip search did not occur.

Alternatively, the Grafton defendants argue that they are entitled to qualified immunity.  Courts in the First Circuit use a three-part analysis for qualified immunity:  (1) whether the plaintiff alleged a constitutional violation, (2) if so, was the asserted constitutional right clearly established at the time of the alleged violation, and (3) would an objectively reasonable officer in the same circumstances have believed that the action taken violated the asserted right.  Carter v. Lindgren, --- F.3d ---, 2007 WL 2570135 at *3 (1st Cir. Sept. 7, 2007).  As noted above, Christian alleges that she was strip searched in violation of the Fourth Amendment.  The defendants argue, however, that the definition of what constituted a strip search was not so clearly defined in October of 2002, when Christian was arrested and then detained at the GCHC, that a reasonable officer would have known that the clothing exchange constituted a strip search.

The court agrees that the definition of a strip search was not clearly defined in October of 2002.  In Wood, the plaintiff who was charged with a misdemeanor alleged that he was unconstitutionally searched three times while being detained at the Hancock County (Maine) Jail.  Wood, 354 F.3d at 58.  Two of the challenged searches occurred in the process of a "clothing search" which required the plaintiff to remove all of his clothing so that the clothing could be searched.  Id. at 59.

13

The defendant asserted that the clothing searches were not strip searches, despite the requirement that the detainee remove all of his clothing.  At trial, the district court defined strip search for the jury as "a deliberate, visual inspection of the naked body of a prisoner which includes the examination of the mouth and armpits."  Id. at 62.  On appeal, the First Circuit held that the district court erred in defining strip search too narrowly by requiring the inspection to be deliberate and by including inspection of the mouth and armpits.  Id. at 63.  As is stated above, the appellate court provided a broader definition that depends on "whether viewing the naked body was an objective of the search, rather than an unavoidable and incidental by-product."  Id. at 65.

Wood was decided on December 31, 2003, more than a year after Christian's detention in October of 2002.  Until the court clarified the definition of strip search in Wood, the scope of what constituted a strip search was not clearly established, as is evidenced by the district court's jury instruction and the appellate court's analysis of the issue.  Therefore, the defendants are entitled to qualified immunity as to Christian's claims based on her allegations that she was strip searched in the process of the clothing exchange.

14

C.  Other Federal Claims

In their motion for summary judgment, the Grafton defendants note that Christian cited Fourth, Fifth, Ninth, and Fourteenth Amendment violations but did not clearly state her claims beyond those based on the alleged strip search.  Because Christian alleged that her cell was dirty and she had to walk barefoot on the cell floor, the defendants surmise that she intended to claim that the conditions of her confinement violated the Fourteenth Amendment.  They analyze the claim under the substantive due process clause.[4]

In her response and her surreply, Christian focuses exclusively on her strip search claims.  She makes no effort to support or even argue any other claims.  Therefore, to the extent she alleged a claim that the conditions of her detention violated the Fourteenth Amendment, or any other constitutional right, the defendants are entitled to summary judgment on those claims.

D.  State Law Claims

Similarly, Christian has not pursued her state law claims in opposing summary judgment.  Because all of Christian's federal

---

[4] The claim would more appropriately be considered a challenge to the conditions of confinement under the liberty interests protected by the Fourteenth Amendment.  See Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005).

15

claims are resolved against her and this court's jurisdiction is based upon the existence of a federal question, 28 U.S.C. § 1331, the court declines to exercise supplemental jurisdiction over her state law claims.  18 U.S.C. § 1367(c); <u>Marrero-Gutierrez v. Molina</u>, 491 F.3d 1, 7 (1st Cir. 2007).  Therefore the state law claims are dismissed without prejudice.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motions for summary judgment (documents nos. 67 and 77) are granted.  Summary judgment is granted in favor of the defendants as to all of the plaintiff's federal claims, and her state law claims are dismissed without prejudice for lack of jurisdiction.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_/s/ Joseph A. DiClerico, Jr._
Joseph A. DiClerico, Jr.
United States District Judge

September 14, 2007

cc:   Charles P. Bauer, Esquire
      Lisa Lee, Esquire
      Daniel J. Mullen, Esquire
      Frank H. Olmstead, Esquire
      Nancy J. Smith, Esquire
      Nicole Corin Christian, pro se